**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

| | |
|---|---|
| **JEFFREY ALAN PENDLETON,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **COMMISSIONER OF SOCIAL** ) <br> **SECURITY,** ) <br> ) <br> ) <br> **Defendant.** ) | **NO. 5:19-cv-00474-MAS** <br><br> **OPINION & ORDER** |

This matter is before the Court on Plaintiff Jeffrey Alan Pendleton's ("Pendleton") motion for attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). [DE 23 (Motion); DE 24 (Affidavit and Supporting Documentation)]. The Commissioner opposes the motion as to only the hourly fee sought. [DE 26]. Pendleton has replied.[1] [DE 30]. For the reasons discussed below, the Court grants in part and denies in part the fee motion, as counsel has not justified the higher, above-cap hourly rate.

## I.   RELEVANT BACKGROUND

This Social Security appeal ended in reversal of the Commissioner's underlying decision under sentence four of 42 U.S.C. § 405(g) and remand to the agency for further proceedings. [DE 21 (Order Reversing & Remanding); DE 22 (Judgment)]. Plaintiff seeks EAJA fees in the total amount of $3686.10, representing compensation for 15.7 hours of attorney work at a rate of

---

[1] Plaintiff too seeks compensation for time spent litigating the fee award in this matter. The Commissioner has not responded to that portion of the request (made in the reply), despite anticipating a possible challenge. [*See* DE 26 at Page ID # 777]. Finding the fee litigation time compensable generally and justified per the record in this particular case, the Court compensates Plaintiff for the additional hours as ordered *infra*.

$195.93/hour and 6.1 hours of paralegal time at $100/hour.  [DE 24 at Page ID # 756].  Plaintiff also seeks compensation for 2.2 attorney hours of work in this fee litigation.  [DE 27].  The motion is timely.[2]  Based on the Court's previous sentence four remand in this action, Pendleton satisfies the "prevailing party" criteria and is entitled to a fee award.  *See Shalala v. Schaefer*, 509 U.S. 292, 302 (1993).  The Commissioner does not disagree, but objects to the total amount requested, as noted.  The renewed motion is fully briefed and ripe for resolution.  [DE 26, 27].

## II.     PREVAILING MARKET RATES

Under the EAJA, "[t]he amount of fees awarded . . . shall be based upon prevailing market rates for the kind and quality of the services furnished," except that attorney's fees shall be capped at $125/hour "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A).  In assessing the prevailing rate in the community, "[t]he relevant community, although a somewhat fluid concept, has been defined as the same metropolitan area as the one in which the case was brought."  *Kalar v. Astrue*, No. CIV.A. 10-428-JBC, 2012 WL 2873815, at *1 (E.D. Ky. July 13, 2012) (citing *Chipman v. Sec'y of Health and Human Servs.*, 781 F.2d 545, 547 (6th Cir. 1986)).  Discerning the appropriate hourly fee in EAJA cases is a matter committed to the court's discretion.  *See Townsend v. Comm'r of Soc. Sec.*, 415 F.3d 578 (6th Cir. 2005).

To show that the prevailing rate in the relevant community exceeds the $125 cap and to justify such a higher hourly fee, "a plaintiff must produce 'satisfactory evidence' that his 'requested rates are in line with those prevailing in the community for similar services by lawyers

---

[2] The Court factors in both Rule 4's 60-day appeal time and the EAJA's own 30-day filing window.  *See* Fed. R. App. P. 4(a)(1)(B); 28 U.S.C. § 2412(d)(1)(B), (d)(2)(G) (the latter section defining a final judgment for EAJA purposes as one that is no longer appealable).

2

of reasonably comparable skill, experience, and reputation.'" *Carson v. Colvin*, No. CV 13-94-GFVT, 2015 WL 5304627, at *1 (E.D. Ky. Sept. 8, 2015) (quoting *Bryant v. Comm'r of Social Sec.*, 578 F.3d 443, 450 (6th Cir. 2009)). Both evidence of fees actually billed and received "in the same geographic area for the pertinent area of practice, *as well as* . . . [proof] of the historical fee reimbursement rate in the district" may be relevant to the prevailing rate calculus. *Id.* (quoting *Page v. Astrue*, No. CIV.A. 09–210–GWU, 2011 WL 2560265, *1 (E.D. Ky. June 28, 2011)); *accord Taulbee v. Astrue*, No. CIV.A. 07-266-GWU, 2008 WL 5173614, at *2 (E.D. Ky. Dec. 10, 2008). Still, it remains Plaintiff's burden to put forth adequate evidence—both substantiating the ultimately sought fee amount *and* justifying an above-cap number, if applicable—in relation to the relevant geographic area. *See Trammell v. Colvin*, No. 2:12-CV-38-JMH, 2013 WL 1856415, at *1 (E.D. Ky. Apr. 30, 2013) (quoting *Adcock–Ladd v. Sec'y of Treasury*, 227 F.3d 343 (6th Cir. 2000)).[3]

The relevant geographic area for the instant analysis is the Lexington-Fayette metropolitan area. *See, e.g.*, *Kalar*, 2012 WL 2873815, at *1. To demonstrate that the prevailing hourly rate here is higher than $125, Plaintiff submitted (1) proof that the cost of living has increased in this area since EAJA inception; and (2) proof of relatively recent above-cap fee awards in other geographic areas. In response, the Commissioner provided historical fee data through his survey of case law from this District, demonstrating that the typical, default EAJA fee awarded in

---

[3] In the reply, Plaintiff briefly cites *Trammel* for the purported proposition that the relevant community is the entirety of the Eastern District of Kentucky, as a monolith. [DE 31 at Page ID # 1133]. The case, however, simply depicts the community as the Eastern District of Kentucky broadly as a means of contrasting the plaintiff's proffered out-of-state locale. Ultimately, the salient part of the *Trammel* decision rests entirely on the Sixth Circuit's view, expressed in *Adcock-Ladd*, that the relevant community for EAJA purposes should always be "*within*" the applicable district—rather than in other, distant states. But the Court does not read either *Trammel* or *Adcock-Ladd* as requiring that the relevant community be the *entirety* of the applicable district or that there necessarily be a single, uniform EAJA hourly rate across each district.

Lexington cases is the cap of $125/hour. [DE 26 at Page ID # 775-77 (collecting cases)]. In light of the evidence before it, the Court cannot find that Plaintiff has justified either the sought rate ($195.93) or a rate otherwise above the $125 cap.

First, Plaintiff's cost-of-living increase evidence does not, in and of itself, establish that the prevailing market rate in Lexington for the pertinent services either is $195.93 or is an amount higher than $125. Plaintiff's Affidavit links to recent Consumer Price Index ("CPI") data for the Lexington-Fayette area and avers based upon the same that the cost of living has increased in this area since EAJA inception in the 1990s. [DE 24 at Page ID # 755-56]. This is undoubtedly true. But, though the cost-of-living increase proof perhaps *opens the door* to an above-cap award, it does not itself *establish* the sought (or any) specific prevailing market rate; it simply lifts the ceiling and permits the Court to depart upward in fee total, if and as warranted based upon the collective market evidence (illustrating fees actually charged and paid locally) supplied in support of the fee request. Accordingly, the question of whether Plaintiff has actually provided adequate market-rate evidence to support her fee request remains committed to the Court's discretion based on its assessment of the aggregate proof before it.

Beyond the CPI data, Plaintiff provides only historical fee information from cases in other areas within the Eastern District of Kentucky and in surrounding geographic areas. Plaintiff primarily relies on a prior fee approval of $165/hour in 2011 in the Covington Division. *Stephens v. Astrue*, CIV. A. 09-55-JBC, 2011 WL 2446451, at *2 (E.D. Ky. June 17, 2011). However, the $165/hour fee in that case was based on particular market rate evidence provided by the plaintiff (including a published newspaper study "and several other documents") within the specific geographic context of the "Cincinnati-Hamilton" market. *Id.*, at *1-*2. These factors render the $165 award and its corresponding analysis inapposite. Critically, Plaintiff provides no similar

4

documentation or evidence of the market rate in the Lexington-Fayette area; she provides only the CPI information and the (limited) historical case information. And, to the extent Plaintiff argues that *Stephens* establishes the prevailing Covington rate, and thus the Lexington rate should be higher given Lexington's purported higher cost of living based on the CPI data, the apples-to-oranges comparison is unpersuasive; *Stephens*'s "Covington" rate is, in reality, the "Cincinnati-Hamilton" rate—and Plaintiff does provide or discuss any cost-of-living comparison between Cincinnati-Hamilton and Lexington-Fayette.

Ultimately, Pendleton does not provide any evidence of the prevailing market rate here in Lexington-Fayette for like services. Absent any affirmative information setting an apt rate, the Court relies primarily on evidence of historical fees awarded and settles on the $125/hour fee in this case. The Sixth Circuit recently confirmed that, though impermissible where contra market evidence justifies a higher rate, reliance on historical local fee awards indeed "may be proper in the absence of any credible evidence by the fee applicant of a higher prevailing market rate[.]" *Doucette v. Comm'r of Soc. Sec.*, 13 F.4th 484, 492 (6th Cir. 2021) (quoting *Farbotko v. Clinton Cty.*, 433 F.3d 204, 210 (2d Cir. 2005)); *see id.* (observing that "courts often default to [$125] because the claimant has failed to substantiate his request for a higher one" but cautioning that, where such substantiation is present, defaulting to $125 is improper). Notably, in contrast with this case, the *Doucette* Court found substantiating information present where the plaintiff presented such things as affidavits from local attorneys opining as to the rate and the availability of attorneys willing to take such cases, among other documents. No market-rate substantiating information is available here, and the Court thus finds a default to $125/hour based on historical, local EAJA information to be appropriate both per the record and per the case law. *See, e.g.*, *Roberts v.*

*Berryhill*, No. 5:12-139, 2017 WL 2311870, at *2 (E.D. Ky. May 26, 2017); *Gibson v. Colvin*, No. 2:12-131, 2013 WL 6191754, at *3 (E.D. Ky. Nov. 26, 2013).

For these reasons, the Court utilizes a $125/hour counsel fee. Finally, as the Commissioner does not oppose it and it appears otherwise justified on this record, the Court awards the sought $100/hour paralegal fee in this matter.

### III.   TOTAL HOURS & COMPUTATION

As noted, the Commissioner envisions but does not ultimately lodge a challenge to the total hours claimed (particularly, those expended in relation to this fee litigation). Regardless, the Court agrees with Plaintiff that such efforts are generally EAJA-compensable. Because the Court finds that the time spent in EAJA litigation in this case was reasonable and that the services were necessary in furtherance of it and not dilatory, it awards fees (at the above-stated hourly rates) for this time. *See Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 161 (1990) (stating that the EAJA requires only that the plaintiff allege that the United States' position *in the underlying litigation* was not substantially justified, and the plaintiff need not predict the justifiability of the Government's fee position); *Doucette*, 13 F.4th at 491 (interpreting the EAJA to squarely permit compensation for time spent in fee litigation and confirming that the amount awarded remains subject to Court consideration, in its discretion). The Court thus awards the appropriate counsel and/or paralegal fee for all hours claimed by Plaintiff, finding them reasonable and justified on this record.

To compute the total fee earned, the Court employs the lodestar calculation to find the "product of the number of hours billed and a reasonable hourly rate." *Minor v. Comm'r of Soc. Sec.*, 826 F.3d 878, 881 (6th Cir. 2016) (citation omitted). Here, the Court approves a total of 17.9 attorney hours (15.7 as requested in DE 24 and 2.2 as requested in DE 27) at $125/hour, plus 6.1

paralegal hours at $100/hour, for a total counsel fee award of $2847.50. Plaintiff does not request reimbursement for any costs or expenses.

In accordance with *Astrue v. Ratliff*, 560 U.S. 586 (2010), the Court will award the fee total to Plaintiff Pendleton, rather than counsel. Under *Astrue*, EAJA fees are to be paid directly to litigants, and they are subject to administrative offset for any federal debts the litigant owes. 560 U.S. at 593. In this Circuit, the Court must award EAJA fees to the litigant directly, regardless of whether the Commissioner demonstrates existing federal debt. *See Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 448 (6th Cir. 2009). Further, because the tendered "Affirmation and Waiver of Direct Payment of EAJA Fees" executed by Pendleton in December 2019 predates the instant fee award, it cannot effectively assign the award to counsel. *See Terry v. Comm'r of Soc. Sec.*, 740 F. App'x 851 (6th Cir. 2018); 31 U.S.C. § 3727(b). Any obligation Pendleton may have to pay counsel is controlled by contract between those parties and is not at issue in this case.

### IV.    CONCLUSION

Accordingly, for the reasons discussed, the Court **GRANTS in part** DE 23 and **AWARDS** EAJA fees in the total amount of $2847.50 directly to Plaintiff Pendleton.

Entered this 22nd day of March, 2022.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge